**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Paul Hansmeier,<br><br>Petitioner,<br><br>v.<br><br>Warden, FPC Duluth,<br><br>Respondent. | Case No. 26-cv-3947 (NEB/DTS)<br><br>**REPORT AND RECOMMENDATION** |

---

Before the Court is Petitioner Paul Hansmeier's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1 (Petition)). For the following reasons, the Court recommends denying the Petition and dismissing this action.

## BACKGROUND

Hansmeier is a federal prisoner at the Federal Prison Camp in Duluth, Minnesota (FPC–Duluth). (*See* Dkt. No. 1 at 1.[1]) The Petition names as Respondent the warden of FPC–Duluth (i.e., Hansmeier's immediate custodian). (*See id.*) In 2019, U.S. District Judge Joan N. Ericksen sentenced Hansmeier to 168 months' imprisonment after he pleaded guilty to conspiring to commit mail and wire fraud and conspiring to commit money laundering. (*See id.*; *United States v. Hansmeier*, 988 F.3d 428, 432 & n.1 (8th Cir. 2021).) Hansmeier's prison term began on July 9, 2019. (*See* Dkt. No. 1-2 at 1.)

---

[1] The Petition consists of a form petition (Dkt. No. 1), a typed petition with supporting argument (Dkt. No. 1-1), and three exhibits (filed together as Dkt. No. 1-2). Pin citations in this Report and Recommendation use the pagination assigned by this District's CM/ECF filing system.

Hansmeier's claims arise under the First Step Act of 2018 (FSA),[2] which (as relevant here) provides that an eligible federal prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities[] shall earn time credits" at a rate of 10 or 15 days for every 30 days of participation. 18 U.S.C. § 3632(d)(4)(A). These earned-time credits (ETCs) "shall be applied toward time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C). The Bureau of Prisons (BOP) can use ETCs to move a prisoner's transfer to supervised release up by as much as 12 months. *See id.* § 3624(g)(3). A prisoner becomes eligible for transfer to prerelease custody (i.e., home confinement or a residential reentry center) once he "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment" and meets other statutory criteria. *Id.* § 3624(g)(1)(A)–(D), (g)(2). For planning, the BOP calculates a prisoner's "FSA Conditional Placement Date," which estimates when the prisoner can move to prerelease custody. (*See, e.g.*, Dkt. No. 1-2 at 2, 4.)

Within this framework, Hansmeier alleges that he has earned ETCs since July 2019 "without interruption," that he has "maintained a minimum or low PATTERN risk level[3] through every reassessment," and that the BOP transferred him from the Federal Correctional Institution–Sandstone to FPC–Duluth, a minimum-security camp. (Dkt.

---

[2] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (codified as amended in scattered sections of 18, 21, and 34 U.S.C.).

[3] PATTERN (the Prisoner Assessment Tool Targeting Estimated Risk and Needs) is the BOP's recidivism-risk assessment tool. *See, e.g.*, BOP, Program Statement No. 5410.01, First Step Act of 2018—Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) at 8 (Nov. 18, 2022) (as amended Mar. 10, 2023), *available at* https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (last visited Oct. 1, 2026). The classification helps the BOP set a prisoner's rate of earning ETCs and decide whether to apply them to prerelease custody or early transfer to supervised release. *See, e.g.*, 18 U.S.C. §§ 3632(d)(4)(A)(ii), 3624(g)(1)(D).

No. 1-1 at 5.) His documents show that the BOP has applied 365 days of credit toward his transfer to supervised release, producing an FSA projected release date of June 12, 2030. (*See id.*; *see also, e.g.*, Dkt. No. 1-2 at 1 (entry for "FSA Projected Release Date").) Hansmeier states that "[t]hose credits, and that date, are not at issue." (Dkt. 1-1 at 5.) He claims the issue is his remaining ETCs, which, he says, "by statute 'shall be applied toward time in prerelease custody.'" (*See id.* (quoting 18 U.S.C. § 3632(d)(4)(C)).)

The BOP generated an "FSA Time Credit Assessment" for Hansmeier dated September 5, 2024. (*See* Dkt. No. 1-2 at 1 ("September 2024 Assessment").) It listed 1,585 "FSA Conditional Placement Days" and an "FSA Conditional Placement Date" of February 8, 2026. (*Id.* at 2.) A second assessment, dated December 1, 2024, listed 1,045 conditional placement days and a conditional placement date of August 2, 2027. (*See* Dkt. No. 1-2 at 3–4 ("December 2024 Assessment").) The December 2024 Assessment calls these figures a "Best Case Scenario" for "Conditional Pre-release Planning & Preparation Only," and states that the dates "can change." (*Id.* at 4.[4])

Hansmeier argues that the changes between the September and December assessments arose because the BOP changed its methodology. He claims that the September 2024 Assessment projected his ETC accrual through the end of his term, "counting the credits he would continue to earn while serving his sentence in prerelease custody." (Dkt. No. 1-1 at 5.) The December 2024 figure, by contrast, projects accrual "only

[4] The Petition describes the September 2024 Assessment as providing a conditional placement date of February 6, 2026, and the December 2024 Assessment as providing 1,074 conditional placement days and a conditional placement date of July 18, 2027. (*See* Dkt. No. 1-1 at 2, 5–6.) The record does not explain these discrepancies, but in any event, they have no bearing on the analysis that follows.

until the date of his transfer to prerelease custody and assigns no value to the credits he will earn thereafter." (*Id.* at 6.)

Hansmeier alleges, "[o]n information and belief," that the BOP implemented the change in or about October 2024 through a memorandum titled "First Step Act (FSA) Planning Dates"—but did so without "publi[cation] in the Federal Register," notice and comment, or explanation. (*Id.*) He further asserts that in other litigation, the BOP has called its earlier methodology a "coding error." (*Id.*) According to Hansmeier, numerous BOP documents state that prisoners continue to earn ETCs while in prerelease custody. (*See id.* at 4–5.) And he alleges that the BOP currently projects his transfer to prerelease custody in January 2027. (*See id.* at 1.)

The Petition asserts four grounds for relief:[5]

- Ground One argues that the FSA requires the BOP to count credits that Hansmeier "will earn in prerelease custody" when assessing whether he "has earned" ETCs equal to the rest of his sentence. (*Id.* at 6–8.)
- Ground Two contends that the BOP's "notice-and-comment regulation and [the BOP's] authoritative construction of that regulation bind the agency." (*Id.* at 8.)
- Ground Three asserts that the BOP's December 2024 change, described above, amended a legislative rule without notice and comment and without the reasoned explanation required under the Administrative Procedure Act ("APA").[6] (*See id.* at 8–9.)
- Finally, Ground Four claims that applying the BOP's revised methodology to Hansmeier "violates the Ex Post Facto Clause and the fair-notice guarantee of the Due Process Clause." (*Id.* at 9.)

[5] Hansmeier also provides anticipatory responses to eight potential defenses. (*See id.* at 9–14.)

[6] Administrative Procedure Act, ch. 324, 60 Stat. 237 (1946) (codified as amended in scattered sections of 5 U.S.C.).

For relief, Hansmeier asks the Court to declare that credits a prisoner will earn in prerelease custody must be counted under § 3624(g)(1)(A); to declare the BOP's "December 2024 methodology . . . contrary to law" and unconstitutional as applied to him; to order the BOP to properly recompute his conditional placement days and his conditional placement date (as February 6, 2026); and to order the BOP to process him for transfer to prerelease custody and then "effectuate that transfer forthwith." (*Id.* at 14–15.) In the alternative, he asks the Court to "recharacterize" any noncognizable claim as a civil action, or to "hold [the] Petition in abeyance pending the Supreme Court's decision in Maxwell v. Thomas, No. 25-5930." (*Id.* at 15.[7])

## ANALYSIS

### I. Standard of Review

Under Rule 4 of the Rules Governing § 2254 Cases in the U.S. District Court (the "§ 2254 Rules"), "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." *Cf.* § 2254 Rules at Rule 1(b) (authorizing application of § 2254 Rules to habeas petitions not covered by Rule 1(a)). For purposes of this review, the Court accepts the Petition's factual allegations as true.

[7] With respect to exhaustion, Hansmeier says that he filed an "administrative remedy request . . . on Form BP-11" directly with the BOP's "Central Office" under 28 C.F.R. § 542.14(d)(5). (Dkt. No. 1-1 at 2.) He argues that any further exhaustion should be excused as futile because the challenged methodology is a "national computational rule" that no warden or regional director may alter. (*Id.* at 2–3.) The form petition lists no filing date for the BP-11, and Hansmeier reports that his request was "[r]ejected." (Dkt. No. 1 at 3.)

## II. Cognizability

The dispositive question is whether the Petition's claims are cognizable in habeas. In the Eighth Circuit, "[i]f the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam); *see also, e.g.*, *Madrigal-Vega v. Director, Fed. Bureau of Prisons*, No. 25-CV-3675 (JRT/EMB), 2026 WL 2240503, at *2 (D. Minn. Aug. 4, 2026) (citing cases, including *Kruger*). In such a case, "the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger*, 77 F.3d at 1073. The same rule governs federal prisoners, like Hansmeier, who proceed under § 2241. *See, e.g.*, *Spencer v. Haynes*, 774 F.3d 467, 469–70 (8th Cir. 2014); *Madrigal-Vega*, 2026 WL 2240503, at *2 (applying rule to § 2241 petition).

The Petition runs afoul of this rule. Hansmeier does not challenge his conviction or the date his imprisonment will end. (*See, e.g.*, Dkt. No. 1 at 5; Dkt. No. 1-1 at 5.) If he prevails here, he would move sooner from a prison camp to an RRC or to home confinement. But these are both forms of prerelease custody within BOP custody. *See, e.g.*, 18 U.S.C. § 3624(g)(2) (listing both as forms of prerelease custody); *Osorio-Calderon v. Warden, FCI Sandstone*, 179 F.4th 1158, 1163 (8th Cir. 2026) (citing cases). In other words, Hansmeier would not leave BOP custody any sooner.

The Eighth Circuit recently discussed such a claim in *Fortner v. Eischen*, 170 F.4th 655 (8th Cir. 2026). There, an FPC–Duluth prisoner sought additional FSA credits "that would make him sooner eligible for transfer to prerelease custody"; the district court had dismissed for lack of habeas jurisdiction under *Spencer*. *Id.* at 656–57. The Eighth Circuit

observed that "*Kruger* and *Spencer* appear to dispose of this case, as the district court concluded." *Id.* at 658. *Fortner* further explained that "[s]upervised release is not detention, but prerelease custody is." *Id.* To be sure, the Eighth Circuit dismissed the appeal as moot, so its *Fortner* discussion is not a holding. *See id.* at 659–60. But *Kruger* and *Spencer* supply the governing rule, and *Fortner* shows how that rule applies here.

Unsurprisingly, this District's courts have reached the same conclusion. *See, e.g.*, *Madrigal-Vega*, 2026 WL 2240503, at *2; *Harper v. Warden, Fed. Prison Camp Duluth*, No. 26-CV-0240 (ECT/LIB), 2026 WL 716902, at *1 (D. Minn. Feb. 13, 2026) (concluding that recalculating ETCs "to facilitate a transfer to prerelease custody . . . is not cognizable in habeas corpus"), *report and recommendation adopted*, 2026 WL 715722 (D. Minn. Mar. 13, 2026); *Abieanga v. Eischen*, No. 24-CV-3131 (JWB/JFD), 2024 WL 4557612, at *1, *3 (D. Minn. Sept. 18, 2024) (stating that claim "that a federal prisoner should sooner be transferred to prerelease custody or home confinement amounts only to an attack on the conditions of the prisoner's confinement and therefore is not cognizable on habeas review," but recommending denial for failure to exhaust), *report and recommendation adopted*, 2024 WL 4557371 (D. Minn. Oct. 23, 2024).

Hansmeier anticipates this problem and offers several responses. (*See, e.g.*, Dkt. No. 1-1 at 2, 10–11.) But none permits the Court to depart from the *Kruger*/*Spencer* rule.

First, Hansmeier argues that his claim challenges a computation of sentence credits, and that *Kruger* and *Spencer* arose on different facts. (*See, e.g.*, *id.* at 2, 10.) But *Kruger* states that the rule turns on "the substance of the relief sought." 77 F.3d at 1073. And the decisions Hansmeier cites do not hold otherwise. *Barber v. Thomas* concerned good-time credit "against prison time," which plainly affects detention length. 560 U.S.

474, 476 (2010). In contrast, ETCs "beyond the first 365 do not lead to sooner release, only to earlier commencement of prerelease custody." *Fortner*, 170 F.4th at 658. *Matheny v. Morrison* also did not address a claim that would change only a prisoner's location of confinement. 307 F.3d 709, 711 (8th Cir. 2002) (concerning payment schedules under Inmate Financial Responsibility Program). Nor do out-of-circuit cases help Hansmeier: *Spencer* noted that other circuits take a broader view of habeas but nevertheless adhered to *Kruger*. 774 F.3d at 470 & n.6.

Second, the Petition suggests that a transfer out of an institution is a form of "release." (*See* Dkt. 1-1 at 10.) But the Eighth Circuit has explained that RRCs and home confinement "are forms of prerelease custody that constitute places of imprisonment." *Osorio-Calderon*, 179 F.4th at 1163. And the governing rule "turns on whether the habeas petitioner is challenging the length of his detention, not his custody." *Fortner*, 170 F.4th at 658. To be sure, in *Preiser v. Rodriguez*, the Supreme Court left open whether habeas reaches conditions-of-confinement claims. 411 U.S. 475, 499–500 (1973). But the Eighth Circuit has answered that question and considers itself "bound by [its] post-*Preiser* precedent." *Spencer*, 774 F.3d at 470. The other Supreme Court decisions Hansmeier cites do not displace the Eighth Circuit's decision. *See Hensley v. Mun. Ct.*, 411 U.S. 345, 345 (1973) (addressing whether person released on own recognizance is "in custody"); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (per curiam) (addressing claims that "'necessarily imply the invalidity' of [detainees'] confinement and removal").

Third, Hansmeier notes that the Eighth Circuit has decided certain challenges to BOP's community-placement rules in habeas. (*See* Dkt. 1-1 at 2 (citing *Elwood v. Jeter*, 386 F.3d 842, 846–47 (8th Cir. 2004); *Fults v. Sanders*, 442 F.3d 1088, 1090–92 (8th Cir.

2006)).) But neither *Elwood* nor *Fults* considered whether the claim was cognizable in habeas, and "drive-by jurisdictional rulings . . . have no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). *Spencer* postdates both cases, addresses cognizability directly, and follows the *Kruger* rule. *See Spencer*, 774 F.3d at 469–71.

Finally, Hansmeier points to the U.S. Government's litigating position, and the grant of certiorari, in *Maxwell v. Dinis* (formerly *Maxwell v. Thomas*). (*See* Dkt. 1-1 at 2, 10.[8]) But neither changes the Eighth Circuit law that binds this Court. The Government's litigating position cannot confer jurisdiction that binding precedent denies. *See, e.g.*, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); *see also, e.g.*, *Great River Ent., LLC v. Zurich Am. Ins. Co.*, 81 F.4th 1261, 1263 (8th Cir. 2023) (citing *Ins Corp. of Ir.*). And Eighth Circuit decisions are "controlling until overruled by [the Eighth

---

[8] In *Maxwell v. Thomas*, the Fifth Circuit affirmed the dismissal of a federal prisoner's § 2241 petition seeking transfer to an RRC or home confinement under the FSA's Elderly Offender Pilot Program. 133 F.4th 453, 454 & n.1 (5th Cir. 2025) (per curiam), *cert. granted*, 146 S. Ct. 2695 (2026). The Fifth Circuit held that § 2241 was the wrong vehicle, applying its own bright-line rule from *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020): habeas is the proper vehicle only if a favorable ruling would "automatically entitle [one] to accelerated release"; otherwise, a claim should arise in a civil-rights suit (here, under *Bivens*). The Supreme Court has granted certiorari to consider whether one can bring a claim about applying ETCs "seeking accelerated transfer to [an RRC] or home confinement" in a § 2241 petition. *Maxwell*, 146 S. Ct. at 2695. The Government, which supports vacatur, agrees that a claim of this kind is cognizable in habeas, but argues that the petitioner failed to exhaust administrative remedies and that 18 U.S.C. § 3621(b) bars review of BOP's placement decisions. *See, e.g.*, Br. for the Resp't Supporting Vacatur 14–16, 35–40, *Maxwell v. Dinis*, No. 25-5930 (U.S. Aug. 5, 2026). The case is now captioned *Maxwell v. Dinis* (after the relevant warden was substituted), and argument is set for November 2, 2026. *See id.* at ii (noting automatic substitution of acting warden); Docket, *Maxwell v. Dinis*, No. 25-5930 (U.S. Aug. 11, 2026) (setting argument date).

Circuit] en banc, by the Supreme Court, or by Congress." *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008).

Because the Petition does not challenge the validity of Hansmeier's conviction or the length of his detention, this Court lacks jurisdiction to issue the writ. *See, e.g.*, *Kruger*, 77 F.3d at 1073. The Court thus recommends denying the Petition and dismissing this action.[9]

## III. Alternative Requests

This leaves Hansmeier's alternative requests. If the Court concludes that any part of the Petition is not cognizable in habeas, he asks it either (1) to recharacterize that portion as a civil action under the APA, or (2) to hold the Petition in abeyance pending

---

[9] The Court notes that the Eighth Circuit's decision in *Osorio-Calderon* also forecloses the main relief that Hansmeier seeks. The prisoner there, whose eligibility under § 3624(g)(1) was undisputed, sought an order compelling transfer to prerelease custody. *See Osorio-Calderon*, 179 F.4th 1160–61 & n.5. The Eighth Circuit affirmed the dismissal of the § 2241 petition because 18 U.S.C. § 3621(b) provides that "'a designation of a place of imprisonment under this subsection is not reviewable by any court.'" *Id.* at 1160, 1165 (quoting 18 U.S.C. § 3621(b)). The panel also concluded that § 3632(d)(4)(C) "is best read as a directive that identifies what group of prisoners the BOP must transfer into prerelease custody, not as establishing an immutable date by which the BOP must effectuate individual transfers," and that "[n]either § 3632(d)(4)(C) nor § 3624(g) says that the BOP must transfer a prisoner immediately upon achieving eligibility." *Id.* (quoting *Crowe v. Fed. Bureau of Prisons*, No. 24-CV-3582 (APM), 2025 WL 1635392, at *22 (D.D.C. June 9, 2025)). It rejected as "illusory" the distinction Hansmeier draws here between whether a prisoner must be transferred and where he is placed. *Compare id.* at 1164 *with* Dkt. 1-1 at 11.

Hansmeier tries to distinguish *Osorio-Calderon*, arguing that his dispute concerns his eligibility date, not an individualized placement decision. (*See* Dkt. 1-1 at 10–11.) But the order he requests would require the BOP to process him for transfer and to "effectuate that transfer forthwith." (*Id.* at 14.) Such an order would fix the fact and date of a transfer to prerelease custody, which is the kind of order *Osorio-Calderon* holds a court may not enter. *See Osorio-Calderon*, 179 F.4th at 1164–65.

the Supreme Court's decision in *Maxwell*. (*See* Dkt. No. 1-1 at 15.) The Court recommends doing neither.

Take recharacterization first. *Spencer* states that when a *pro se* prisoner's habeas petition raises a "potentially viable" conditions-of-confinement claim, a district court should usually let the prisoner pursue that claim in a civil action rather than simply dismiss the petition. 774 F.3d at 468, 471 (quoting *Young v. Armontrout*, 795 F.2d 55, 56 (8th Cir. 1986)); *see also, e.g.*, *Tomah v. Clay Cnty. Corr. Facility*, No. 25-CV-3018 (JRT/LIB), 2025 WL 2778444, at *2 (D. Minn. Aug. 4, 2025) (quoting *Spencer*'s consent requirement but declining to recharacterize where petitioner had not consented and had not stated plausible claim), *report and recommendation adopted*, 2025 WL 2778138 (D. Minn. Sept. 29, 2025). Hansmeier provides the consent that *Spencer* requires. Recharacterization is not automatic, however. When a civil claim "is otherwise baseless, the court should refrain from treating the petition as an otherwise well-pleaded claim under a different jurisdictional basis." *Kruger*, 77 F.3d at 1074 n.1; *see also, e.g.*, *Jones v. Fed. Bureau of Prisons*, No. 09-CV-1074 (MJD/RLE), 2010 WL 3118679, at *8 (D. Minn. Feb. 8, 2010) (citing *Kruger*), *report and recommendation adopted*, 2010 WL 3118664 (D. Minn. Aug. 4, 2010). A claim can fall into this category for procedural reasons. In *Kruger*, for instance, the civil claim had already been litigated in state court. *See Kruger*, 77 F.3d at 1074. Here, Hansmeier's own allegations show that a civil action raising the Petition's claims would be dismissed for failure to exhaust administrative remedies.

A civil action raising Hansmeier's claims would fall under the Prison Litigation Reform Act ("PLRA").[10] Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion rule applies to federal prisoners and reaches "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299 n.1 (1991)); *see also, e.g.*, *Lindsey v. Helland*, No. 26-CV-0374 (PJS/DLM), 2026 WL 1024469, at *2 (D. Minn. Mar. 11, 2026) (quoting *Porter*), *report and recommendation adopted*, 2026 WL 1024178 (D. Minn. Apr. 15, 2026). The rule covers any civil action "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison," except "habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g)(2). Thus, the very feature that takes Hansmeier's claims out of habeas (i.e., they concern where he serves his sentence, not the sentence's duration) would bring any civil action raising them within § 1997e(a).

Under the PLRA, exhaustion of available administrative remedies is "mandatory." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also, e.g.*, *Charron v. Allen*, 37 F.4th 483, 489 (8th Cir. 2022) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). Exhaustion must also be "proper," meaning that the prisoner "us[es] all steps that the agency holds out, and [does] so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 84, 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.

---

[10] Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, tit. VIII, 110 Stat. 1321, 1321–66 to 1312–77 (1996) (codified as amended in scattered sections of 11, 18, 28, and 42 U.S.C.).

2002)). Finally, a prisoner must exhaust before filing suit: "If exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Smith v. Starr*, No. 21-CV-2703 (SRN/BRT), 2022 WL 4084186, at *4 (D. Minn. Aug. 18, 2022) (citing *Johnson*), *report and recommendation adopted*, 2022 WL 4080752 (D. Minn. Sept. 6, 2022).

Hansmeier alleges submitting a request (on a Form BP-11) directly to the BOP's Central Office under 28 C.F.R. § 542.14(d)(5). (*See* Dkt. No. 1-1 at 2.) He reports the result as "Rejected." (Dkt. No. 1 at 3.) The meaning of this is not entirely clear, but the Court understands it as the BOP's regulations use it: the request was returned without a response. *See* 28 C.F.R. § 542.17(a). Without more, the Court cannot conclude that this reflects proper exhaustion. *See, e.g.*, *Woodford*, 548 U.S. at 90. And the Petition describes no other administrative filing by Hansmeier. (*See* Dkt. No. 1 at 4–5, 7.)

Hansmeier suggests that any further steps would be futile. (*See* Dkt. No. 1-1 at 2–3.) That point can have force in habeas, given that the exhaustion requirement facing § 2241 petitions is "judicially created." *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007). But while "judge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," statutes like the PLRA "establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993)); *see also, e.g.*, *Lindsey*, 2026 WL 1024469, at *3 (quoting *Ross*). The Supreme Court has thus explained that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (citing cases).

As a result, on the Petition's own allegations, a civil action raising its claims would be subject to dismissal for failure to exhaust.[11] If anything, recharacterization would make Hansmeier worse off: he would owe the $350 filing fee for a civil action rather than a habeas petition's $5 fee. *See* 28 U.S.C. § 1914(a). And dismissing the Petition without prejudice leaves Hansmeier free to pursue the BOP's remedy process and then to file a civil action if he chooses. The Court therefore recommends denying the request to re-characterize the Petition.[12]

Nor does the Court recommend holding the Petition in abeyance until the Supreme Court decides *Maxwell*. A stay would do little that a dismissal without prejudice would not. Because the Court lacks jurisdiction over the Petition's claims, the recommended dismissal is without prejudice. *See, e.g.*, *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004) (citing cases). If *Maxwell* holds that claims like Hansmeier's are

[11] To be sure, failure to exhaust is an affirmative defense under the PLRA, so a prisoner does not need to plead exhaustion in his complaint. *See, e.g.*, *Jones*, 549 U.S. at 216. But a court can nevertheless dismiss based on exhaustion when a prisoner's own allegations establish the defense. *See id.* at 215–16. That is the situation here. Nothing in the Petition suggests that the BOP's remedy process was not "available" to Hansmeier. *See, e.g.*, *Ross*, 578 U.S. at 642–44. He argues that BOP wardens and regional directors cannot change a national methodology (*see, e.g.*, Dkt. No. 1-1 at 2), but he does not claim that the Central Office lacks that power, and under the PLRA, a prisoner must use "'all steps that the agency holds out.'" *Woodford*, 548 U.S. at 90 (quoting *Pozo*, 286 F.3d at 1024). If Hansmeier thinks that the Court has misunderstood his exhaustion efforts, he can say so in his objections to this Report and Recommendation. And because the recommended dismissal is without prejudice, nothing here would prevent Hansmeier from showing in a later civil action that he exhausted (or that further remedies were unavailable).

[12] The Court also recommends denying Hansmeier's related request for leave to amend the Petition to add an APA claim (*see* Dkt. No. 1-1 at 14); an APA claim added to this action would face the same exhaustion problem discussed in the text.

cognizable in habeas, he can file a new § 2241 petition then.[13] The Court therefore recommends denying the request for a stay.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**THE COURT RECOMMENDS:**

1. Petitioner Paul Hansmeier's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1) be **DENIED**.

2. Hansmeier's requests to recharacterize the Petition, for leave to amend, and to hold the Petition in abeyance (within Dkt. No. 1-1) be **DENIED**.

3. This action be **DISMISSED WITHOUT PREJUDICE**.

4. Hansmeier's Motion for Expedited Consideration Pursuant to 28 U.S.C. § 2243 be **DENIED** as moot.

Dated: October 8, 2026

s/ David T. Schultz
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being

[13] A stay would also likely do Hansmeier little practical good. He reports that the BOP now projects his transfer to prerelease custody in January 2027, and says that each month of delay "carries this case closer to mootness." (Dkt. No. 1-1 at 1; *see also id.* at 14.) But *Maxwell* will not be argued until November 2, 2026, and a decision may not issue until the end of the Supreme Court's current Term. Holding the Petition in abeyance would thus likely leave this case sitting idle while (by Hansmeier's own account) it moves toward mootness.

served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).